# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| EDDA D., | Case No. 2:25-cv-06976-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| FRANK J. BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Edda D. appeals the decision of the administrative law judge ("ALJ") denying her claim for disability insurance benefits and supplemental security income. For the reasons set forth below, the ALJ's denial of benefits is affirmed, and this action is dismissed with prejudice.

## I.    BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income on April 25, 2020, alleging disability beginning October 3, 2017.[1] See Administrative Record ("AR") 274-83. Her claim was denied at the initial level and on reconsideration. See AR 116-17, 168-69, 191-97. She requested a hearing before an ALJ, who conducted a hearing on March 23,

---

[1] Citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

2023. See AR 42-70. Plaintiff testified at the hearing, as did a vocational expert ("VE"). See id. Following the hearing, the ALJ denied Plaintiff's claim on March 30, 2023. See AR 14-35.

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. See AR 19. At step two, the ALJ found that Plaintiff had the following severe impairments:

> degenerative disc disease of the lumbar spine with impingement; degenerative disc disease of the cervical spine with impingement; status post left humerus fracture, left tibial fracture; left shoulder traumatic arthropathy, tendinosis and capsulitis; left elbow epicondylitis; left hand tenosynovitis; degenerative joint disease of the bilateral hips; PTSD; generalized anxiety disorder; and major depressive disorder/dysthymic disorder.

AR 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 21.

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b)[2] with the following exertional and non-

---

[2] Sections 404.1567(b) and 416.967(b) defines "light" work as "work involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

exertional limitations:

> [S]he can lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours, stand for 6 hours, and walk for 6 hours in an 8- hour workday, for 5 days a week. She also has the following limitations: no more than frequent pushing and pulling, reaching, and handling with left upper extremity; no crawling, exposure to hazards, or climbing ladders, ropes, or scaffolds, and no more than occasional balancing, crouching, kneeling, stooping, or climbing ramps or stairs, as those are defined in the DOT/SCO; and no exposure to extreme temperatures of cold. She can understand, remember, and carry out simple instructions. She can have occasional interactions with supervisors and coworkers but no interactions with the public, and can deal with frequent changes in a routine work setting.

AR 22. The ALJ found that Plaintiff was unable to perform any past relevant work. See AR 26. At step five, based on the VE's testimony, the ALJ found that Plaintiff could perform the following jobs that exist in significant numbers in the national economy: marker, router, and collator. See AR 26-27. Thus, the ALJ found that Plaintiff was not disabled. See AR 28. The Appeals Council denied review of the ALJ's decision. See AR 1-4.

On February 13, 2024, Plaintiff filed an appeal in this Court, alleging that the ALJ erred by not finding that her complex regional pain syndrome ("CRPS") was medically determinable and by rejecting her subjective-symptom testimony. See Edda D. v. O'Malley, No. 24-01213, 2024 WL 6969023 (C.D. Cal. Sept. 13, 2024). On September 13, 2024, the Court found that the ALJ erred in evaluating Plaintiff's CRPS, noting that it was well-documented in the medical evidence of record and that the error was not

harmless. See id. The Court remanded for the ALJ to evaluate the medical evidence concerning Plaintiff's CRPS and determine whether and how it affected her RFC. See id.

On remand, the ALJ conducted a second hearing, at which Plaintiff and a VE testified. See AR 32-61. Thereafter, the ALJ denied Plaintiff's claim. See AR 1318-33.

The ALJ again followed the five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ reached the same findings at steps one, two, and three as in his original decision, with one exception. See AR 1321. At step two, the ALJ found that Plaintiff's CRPS constituted a severe impairment. See id. At step four, the ALJ reached the same RFC finding as in the first decision with respect to Plaintiff's ability to perform light work with exertional limitations. See AR 1324. The ALJ modified Plaintiff's non-exertional limitations. See id. In his original decision, he found that Plaintiff could have only occasional interactions with supervisors and coworkers and no interactions with the public. See AR 22. On remand, the ALJ found that Plaintiff could "have frequent interactions with supervisors, coworkers, and the public." AR 1324. Relying on the VE's testimony, the ALJ found that Plaintiff could perform the following jobs, which exist in significant numbers in the national economy: cleaner, collator operator, and router. See AR 1332. Accordingly, the ALJ found that Plaintiff was not disabled. See AR 1333.

## II.   LEGAL STANDARD

A district court will set aside a denial of benefits only if "it is either not supported by substantial evidence or is based on legal error." Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (citation omitted). Under the substantial-evidence standard, the district court looks to the existing administrative record and determines "whether it contains sufficient evidence

to support the agency's factual determinations." <u>Biestek v. Berryhill</u>, 587 U.S. 97, 102 (2019) (citation omitted) (cleaned up). "Substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> at 103 (citation omitted). This threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." <u>Id.</u> at 103, 108. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

### III.   DISCUSSION

The parties dispute: (1) whether the ALJ complied with the Court's order to properly consider the medical evidence concerning Plaintiff's CRPS; (2) whether the ALJ's decision to alter Plaintiff's non-exertional limitations in his RFC finding was justified; (3) whether the ALJ properly considered medical opinions concerning the effects of Plaintiff's severe mental-health impairments; and (4) whether the ALJ erred in rejecting Plaintiff's subjective-symptom testimony. <u>See</u> Dkt. 11 at 7-25.

### A.   <u>Plaintiff's RFC</u>

Plaintiff contends that the ALJ committed three errors in determining her RFC. First, she faults the ALJ for failing to find that her CRPS caused any RFC limitations other than those that the ALJ identified in his initial hearing decision. <u>See</u> Dkt. 11 at 7. Second, Plaintiff maintains that no medical evidence supported the ALJ's decision on remand to downgrade his prior RFC finding concerning Plaintiff's non-exertional limitations. <u>See id.</u> at 11-14. Third, Plaintiff faults the ALJ for ignoring medical evidence in the record that supported greater non-exertional restrictions than those reflected in the ALJ's RFC finding. <u>See id.</u> at 14-19. The Court will address each argument in turn.

#### 1.   Legal Standard

At step four of the five-step process, the ALJ must determine the

claimant's RFC, which measures the claimant's capacity to engage in basic work activities. See Bowen v. New York, 476 U.S. 467, 471 (1986); Burch, 400 F.3d at 683. The RFC is a determination of "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). Although the RFC assessment is ultimately the ALJ's responsibility, it must be supported by substantial evidence. See Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008)). The ALJ must "set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence." Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999).

### 2.   Plaintiff's CRPS

#### a.   Background

On February 1, 2021, Dr. Seung Ha Lim personally examined Plaintiff in connection with her alleged physical impairments. See AR 788-92. He noted that Plaintiff had been diagnosed with CRPS in her left arm but observed that, among other things, Plaintiff was able to generate 40 pounds of force using her right hand and 30 pounds of force using her left. See AR 789. According to Dr. Lim, Plaintiff's range of motion in both arms was "within normal limits," although she displayed "hypersensitivity [in] the left upper extremity." AR 790-91. Dr. Lim found that Plaintiff could perform medium work requiring her to frequently use her left arm for "pushing, pulling, and overhead reaching." AR 791.

Three weeks later, on February 22, 2021, Dr. Gideon Lowell, a state agency consultant, reviewed Dr. Lim's findings and found that Plaintiff was limited to light work with some restrictions. See AR 82-85. Although Dr. Lowell disagreed with Dr. Lim's finding that Plaintiff could perform medium work, he concurred with Dr. Lim's finding that Plaintiff could frequently use

her left arm for pushing, pulling, and overhead reaching. See AR 83-84. Dr.
Lowell also found that Plaintiff had no restrictions on her ability to use her
hands for gross and fine manipulation. See AR 84. Approximately one year
later, Dr. F. Greene, another state agency consultant, reached the same
conclusions. See AR 132-36.

About six months after this case was remanded, Dr. Lim examined
Plaintiff a second time. See AR 1878-87. This time, Plaintiff was able to
generate 45 pounds of force using her right hand and five pounds of force using
her left. See AR 1885. Dr. Lim noted that Plaintiff's range of motion in both
upper extremities was "within normal limits," although she claimed to
experience "hypersensitivity to touch in the left elbow area." AR 1886. Dr.
Lim again found that Plaintiff could, among other things, perform medium
work requiring her to frequently use her left hand for pushing and pulling. See
AR 1878-80.

### b.    The ALJ's Decision

The ALJ found that Plaintiff had the RFC to perform light work that,
among other things, required her to "frequently push, pull, reach, handle, and
finger with left upper extremity." AR 1324. In doing so, the ALJ rejected some
of Dr. Lim's findings—including his finding that Plaintiff could perform
medium work—but credited his finding regarding Plaintiff's ability to
frequently use her left arm. See id. The ALJ largely credited Dr. Lowell's and
Dr. Greene's opinions, although the ALJ limited Plaintiff's exertional abilities
more than either Dr. Lowell or Dr. Greene had opined. See AR 1329.

### c.    Analysis

Plaintiff's CRPS argument presents a challenge to the evidence
supporting the ALJ's RFC finding that Plaintiff could frequently push, pull,
reach, handle, and finger with her left arm. In particular, Plaintiff contends
that the ALJ's RFC finding failed to account for her CRPS in the left arm, see

Dkt. 11 at 7-11, which, according to the ALJ, was a severe impairment, see AR 1321. That argument fails because substantial evidence supports the ALJ's RFC finding. The ALJ based his RFC assessment on the opinions of Dr. Lim, who personally examined Plaintiff twice, and the non-testifying state agency physicians, all of whom opined that Plaintiff could, at a minimum, perform light work that required her to frequently push, pull, reach, handle, and finger with her left arm. See AR 82-85, 132-36, 791. Indeed, Dr. Lim twice found Plaintiff capable of such work—once in February 2021 and again in April 2025—despite his awareness that Plaintiff had been diagnosed with CRPS in her left arm. See AR 788-92, 1878-80. Those opinions constitute substantial evidence supporting the ALJ's RFC assessment. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); Dyke v. Berryhill, No. 17-08967, 2019 WL 13043633, at *1 (C.D. Cal. Apr. 24, 2019) (concluding that ALJ's RFC assessment was supported by substantial evidence when it was based on opinions of consultative examiner and state agency physicians).

To the extent Plaintiff believes that the Court's remand order required the ALJ to alter his RFC finding concerning Plaintiff's exertional limitations to account for her CRPS, she is mistaken. To be sure, the Court noted that a proper consideration of Plaintiff's CRPS "could have resulted" in a different RFC finding. See Edda D., 2024 WL 6969023, at *3. But the Court never suggested that it required as much. And, as discussed above, medical evidence adduced before and after the remand order supported the conclusion that, despite her CRPS, Plaintiff could frequently push, pull, reach, handle, and finger with her left arm. Accordingly, the Court cannot disturb the ALJ's RFC finding.

Plaintiff's suggestion that the ALJ failed to adequately address the medical evidence in the record concerning her CRPS is unpersuasive. See Dkt. 11 at 10. As related above, the ALJ relied on the medical evidence in the record to find that Plaintiff's CRPS constituted a severe impairment. See AR 1321. Indeed, in finding that Plaintiff's CRPS "show[ed] persisting, limiting pain in [her] left upper extremity," AR 1327, the ALJ cited all but one of the medical records that Plaintiff contends he failed to sufficiently address.[3] Although Plaintiff faults the ALJ for failing to sufficiently discuss how the medical records described her CRPS symptoms, see Dkt. 11 at 10, the ALJ's citation to and reliance on those records shows that he was aware of their content. And despite his failure to provide a detailed discussion of the records, the ALJ necessarily relied on them in finding that Plaintiff's CRPS was a severe impairment that caused her persistent, limiting pain in her left arm.

Moreover, considering that the medical records concerning Plaintiff's CRPS were central to the Court's remand order—of which the ALJ was well aware—there is every reason to believe that the ALJ understood what the medical records showed concerning Plaintiff's CRPS and its resulting symptoms. Indeed, the only evidence concerning Plaintiff's CRPS that the ALJ mischaracterized was the treatment Plaintiff received. Specifically, the ALJ mistakenly stated that Plaintiff had been treated with a stellate ganglion block and a spinal cord stimulator for her back pain, see AR 1326-76, when, in fact, she had received those treatments for the pain in her left arm due to her CRPS, see AR 645, 647-49, 652, 657-59. But the treatment Plaintiff received for her CRPS had no bearing on how the condition affected her ability to perform work-related tasks.

---

[3] The only record identified by Plaintiff that the ALJ did not cite consists of a handwritten notation that provides no details about Plaintiff's CRPS that had not already appeared in the records that the ALJ cited. See AR 1169.

Evidence of conservative treatment is relevant to an ALJ's assessment of a claimant's subjective-symptom testimony. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995))). Such evidence, therefore, could impact an RFC finding. But here, the ALJ did not cite Plaintiff's conservative treatment for her CRPS in discounting her subjective-symptom testimony. As a result, any error on the ALJ's part in identifying the treatment Plaintiff received for her CRPS was harmless. See Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (concluding that ALJ's failure to address medical evidence is harmless when the evidence is "inconsequential to the ultimate nondisability determination" and, if considered, would not have caused a reasonable ALJ to reach a different disability determination (citation omitted)).

Accordingly, remand is not warranted on this claim of error.

### 3.    The ALJ's Modification of Plaintiff's Non-Exertional Limitations

Plaintiff contends that the ALJ erred in downgrading the prior RFC finding concerning her non-exertional limitations. See Dkt. 11 at 11-14. As related above, the ALJ's RFC finding on remand was the same as his original RFC finding, with one exception: he originally found that Plaintiff could have only occasional interactions with supervisors and coworkers and no interactions with the public, see AR 22, but on remand, he found that she could "have frequent interactions with supervisors, coworkers, and the public." AR 1324. According to Plaintiff, no medical evidence supported this alteration to the RFC, and the ALJ failed to explain why he altered the original RFC finding. See Dkt. 11 at 11-14. As such, Plaintiff asserts that the ALJ's RFC finding on remand is not supported by substantial evidence. See id.

In <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1154 (9th Cir. 2007), the Ninth Circuit rejected an argument nearly identical to the one Plaintiff makes here. <u>See id.</u> There, the claimant argued that the ALJ was not free on remand to change the claimant's RFC and that the ALJ's new finding was erroneous. <u>See id.</u> Rejecting that argument, the Ninth Circuit reasoned that, because the Appeals Council vacated the ALJ's original decision and specifically instructed the ALJ to reassess the claimant's residual functional capacity, "the ALJ's original finding no longer existed." <u>Id.</u> Here, under <u>Massachi</u>, the ALJ was not bound by his prior RFC finding because it no longer existed on remand. As such, the ALJ was free to reach a different RFC finding, provided that it was supported by substantial evidence.

Plaintiff relies on <u>Gageby v. Dudek</u>, No. 24-2595, 2025 WL 1352401 (9th Cir. May 9, 2025). There, the Ninth Circuit held that the ALJ erred on remand by reducing the claimant's limitations in concentration, persistence, and pace from "moderate" to "mild" without adequately explaining the change. <u>Id.</u> at *1. According to the Ninth Circuit, the ALJ relied on nearly identical reasoning to reach different conclusions before and after remand, yet failed to explain why his prior rationale was no longer persuasive or how any evidence justified his revised finding. <u>See id.</u> Citing <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th Cir. 2014), and <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 42 (1983), the Ninth Circuit stated that an ALJ must provide a reasoned explanation when changing prior RFC findings. <u>See Gageby</u>, 2025 WL 1352401, at *1.

Plaintiff's reliance on <u>Gageby</u> is unpersuasive. As an initial matter, <u>Gageby</u> is an unpublished memorandum disposition. As the Ninth Circuit has made clear, its unpublished memorandum dispositions are not binding precedent. <u>See Grimm v. City of Portland</u>, 971 F.3d 1060, 1067 (9th Cir.

11

2020). Although they "can be cited, and may prove useful, as examples of the applications of settled legal principles," they should not be used—as Plaintiff would have the Court use Gageby—"as the pivotal basis for a legal ruling by a district court." Grimm, 971 F.3d at 1067; see Brown v. Comm'r of Internal Revenue, 116 F.4th 861, 887 (9th Cir. 2024) (Lee, J., dissenting) ("Over and over, seemingly at every judicial conference or bench-and-bar meeting, judges of the Ninth Circuit warn litigants and district courts against relying on our unpublished memorandum dispositions.").

Indeed, Gageby does not mention—let alone discuss—the Ninth Circuit's published opinion in Massachi, which, as noted above, held that prior RFC findings cease to exist once the Appeals Council vacates the ALJ's underlying decision. Furthermore, the cases that Gageby cites for the proposition that, on remand, an ALJ must explain any changes to a prior RFC finding do not support that proposition. The first case, Treichler, did not concern an ALJ's decision after his first one was vacated. Rather, it addressed whether the ALJ had provided sufficient reasons for rejecting the claimant's subjective-symptom testimony. Treichler, 775 F.3d at 1102-03. The second case on which Gageby relies, State Farm, is inapposite. It does not involve a claim for disability benefits or a judicial review of an ALJ's RFC finding after his original decision was vacated. Rather, State Farm concerns what a government agency must do when it changes course by rescinding a generally applicable agency rule, see 463 U.S. at 42. Specifically, it explained that when a government agency changes or rescinds an existing rule or policy, it must provide a reasoned explanation for the change. See id. Put simply, neither case on which Gageby relies supports the proposition that an ALJ on remand must explain why his RFC finding is different from that in a prior, vacated decision.

In any event, even if Gageby were controlling, Plaintiff still could not show that the ALJ erred. Unlike the ALJ in Gageby, who used "nearly

12

identical explanations to reach two different decisions" concerning the claimant's RFC, 2025 WL 1352401, at *1, the ALJ here explained the basis for his finding on remand that Plaintiff could "have frequent interactions with supervisors, coworkers, and the public," AR 1324. Specifically, the ALJ cited the opinions of two state-agency medical consultants who found that Plaintiff had no social-interaction limitations. See AR 88 (opinion of Dr. Pamela Hawkins), 138 (opinion of Dr. L. Closky); see also AR 1330 (ALJ crediting both opinions but nevertheless limiting Plaintiff to only "frequent interactions with supervisors, coworkers, and the public"). The ALJ did not address those specific findings in his original decision, and his reliance on them on remand differentiates his explanation for his original RFC finding from his explanation for the one on remand.[4] Moreover, as the ALJ noted, see AR 1328, Plaintiff reported to her treating physician in January 2025—that is, after the case had been remanded—that her medications were "working fine," that she felt "balanced," and that her "anxiety and mood" were "under control," AR 1670. She also reported that her energy levels were "stable" and that she had been

---

[4] The opinions of two state-agency medical consultants were available to the ALJ when he initially found that Plaintiff could have only occasional interactions with supervisors and coworkers and no interactions with the public. Indeed, the ALJ cited both opinions in his original decision and found portions of them unpersuasive. See AR 25. But the ALJ neither credited nor rejected either consultant's finding that Plaintiff had no social-interaction limitations. See id. Considering that the ALJ assessed non-exertional limitations on Plaintiff's ability to interact with others in the original hearing decision, he arguably should have discussed those specific findings in formulating Plaintiff's RFC. But any error in failing to do so in the original decision did not prevent the ALJ from rectifying that error on remand. Moreover, because the ALJ did not previously address the state-agency medical consultants' findings concerning Plaintiff's social limitations, his decision on remand to rely on those findings was not inconsistent with his prior evaluation of the medical evidence.

"engaged in social activities." Id. That evidence, coupled with the state-agency medical consultants' findings that Plaintiff had no social-interaction limitations, constituted substantial evidence supporting the challenged aspect of the ALJ's RFC finding on remand. See Thomas, 278 F.3d at 957; Dyke, 2019 WL 13043633, at *1.

Accordingly, remand is not warranted on this claim of error.

### 4.    The ALJ's Consideration of the Medical Evidence

Plaintiff contends that the ALJ ignored medical evidence in the record that supported greater non-exertional restrictions than those reflected in the ALJ's RFC finding. See Dkt. 11 at 14-19. First, she asserts that the ALJ omitted key limitations identified by two state-agency medical consultants whose opinions the ALJ found persuasive. See id. at 14-15. Specifically, Plaintiff notes that the ALJ's RFC finding did not include the consultants' findings that she required a low-demand work setting, where any changes should be introduced gradually. See id. at 15.[5] Second, she contends that the ALJ failed to evaluate a 2018 medical opinion describing the extent of her psychological and emotional debilitation. See id. at 17-18.

### a.    Background

On April 6, 2021, Dr. Pamela Hawkins, a non-examining state agency medical consultant, reviewed Plaintiff's medical records and found, among other things, that she was unlimited in her ability to carry out short and simple instructions and to "maintain concentration, pace and persistence for simple and some detailed routine tasks." AR 86-89. By contrast, Dr. Hawkins found that Plaintiff was moderately limited in her ability to carry out detailed

---

[5] The two state-agency consultants whose findings Plaintiff faults the ALJ for ignoring are the same consultants the ALJ relied on in finding that Plaintiff could have frequent interactions with supervisors, coworkers, and the public. See AR 1324.

instructions and routine tasks. See id. In explaining Plaintiff's adaptation capacities and limitations, Dr. Hawkins stated that Plaintiff could "adapt to a low demand work setting consistent with simple and some detailed work" and noted that, "[f]or greatest success, changes should be introduced gradually." AR 87. On February 10, 2022, Dr. L. Closky, another non-examining state agency medical consultant, reviewed Plaintiff's medical records and reached the same findings. See AR 137-39.

On February 23, 2022, Plaintiff underwent a mental status examination by Ana L. Nogales, Ph.D., a qualified medical examiner. See AR 627-43. Dr. Nogales opined that Plaintiff suffered from post-traumatic-stress disorder and major depression. See AR 642. Dr. Nogales found that Plaintiff's symptomatology included "extreme sadness, fear, anxiousness, agitation, a lack of interest in pleasurable activities and feelings of hopelessness which are compounded by the pain in her left shoulder." Id. According to Dr. Nogales, Plaintiff's conditions were the "direct result of [a] debilitating accident she sustained in October 2017." Id. Dr. Nogales recommended that Plaintiff undergo cognitive behavioral therapy and suggested that she take antidepressant medication. See AR 642-43.

### b.    Analysis

The ALJ did not err in his assessment of the medical evidence. First, the ALJ's RFC finding limiting Plaintiff to "understand[ing], remember[ing], and carry[ing] out simple instructions," AR 1324, adequately accounted for the state-agency medical consultants' opinions that she could "adapt to a low demand work setting consistent with simple and some detailed work," AR 88, 139.[6] Although Plaintiff construes the consultants' references to "low demand

---

[6] Notably, the ALJ's RFC finding regarding Plaintiff's ability to carry out instructions was more restrictive than the limitations assessed by the non-examining state agency medical consultants. Indeed, they found that Plaintiff

work" as imposing a limitation separate and apart from a restriction to "simple" work, she ignores that those references are qualified by the phrase "consistent with." Read plainly, the consultants' use of "consistent with" indicates that a low-demand work setting corresponds to or aligns with simple work, rather than constituting an additional limitation. See, e.g., Davis v. Saul, No. 18-01968, 2019 WL 6838912, at *2-3 (D. Nev. Dec. 13, 2019) (limiting plaintiff to simple tasks accounted for medical opinions that he "could adapt to a low-demand work setting consistent with simple and some detailed work"), aff'd, 846 F. App'x 464 (9th Cir. 2021); Fox v. Berryhill, No. 16-4738, 2017 WL 3197215, at *5 (C.D. Cal. July 27, 2017) (concluding that ALJ accommodated state agency medical consultant's suggestion that plaintiff work in "[a] more flexible and low demand work environment" by limiting plaintiff to simple, routine work).

Second, the ALJ did not err in opting not to include the state agency medical consultants' recommendations about which work environment would give Plaintiff the best chance of success. Both consultants certainly suggested that Plaintiff would have the "greatest" chance to succeed in a work environment where changes were "introduced gradually." AR 87, 139. But to the extent Plaintiff believes that the ALJ was required to either incorporate that suggestion into his RFC finding or provide reasons for rejecting it, she is mistaken. A finding about a claimant's RFC is not intended to identify the best possible scenario in which the claimant can perform work; rather, it is intended to identify "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). Here, the state agency medical consultants' recommendation had no bearing on the most Plaintiff could do despite her

---

could carry out some detailed routine tasks, see AR 89, 139, whereas the ALJ found that she could carry out only simple instructions, see AR 1324.

limitations; accordingly, the ALJ was under no obligation to address it. See Mendoza v. Berryhill, No. 17-01210, 2019 WL 1259434, at *5-6 (E.D. Cal. Mar. 19, 2019) (finding that ALJ did not err in omitting state agency physician's recommendation that claimant "would fare best in a low-stress" work setting because recommendation was "not [a] concrete" functional limitation); Carmela S. v. Saul, No. 19-6044, 2020 WL 3542839, at *3 (W.D. Wash. June 30, 2020) (finding that ALJ did not err by omitting aspect of consultants' opinion that plaintiff would "do best" with few coworkers because it expressed preference rather than required functional limitation addressing "the most" plaintiff could do).

Finally, the ALJ did not err in failing to address Dr. Nogales's opinion in formulating Plaintiff's RFC. As an initial matter, the ALJ repeatedly cited Dr. Nogales's opinion and, thus, necessarily considered it. See AR 1327, 1328. But the ALJ was not required to consider Dr. Nogales's opinion in determining Plaintiff's RFC because the opinion contained no statements about what Plaintiff could do despite her impairments. See 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in . . . your abilities to [perform physical and mental demands of work and] adapt to environmental conditions."); 20 C.F.R. § 416.913(a)(2) (same). Instead, Dr. Nogales diagnosed Plaintiff with post-traumatic-stress disorder and major depression, described the symptoms Plaintiff had reported, and recommended appropriate treatment. See AR 627-43; see also Skinner v. Astrue, No. 09-00971, 2010 WL 546363, at *3 (C.D. Cal. Feb. 8, 2010) ("[T]he mere diagnosis of a psychiatric disorder does not substitute for a finding of functional limitations."); Riley v. Kijakazi, No. 22-00366, 2023 WL 3896269, at *9 n.9 (E.D. Cal. June 8, 2023) ("Plaintiff points to the fact that he was 'diagnosed with paranoid

17

schizophrenia and psychosis,' but mere diagnosis alone does not establish a limitation in the ability to work." (citations omitted)). Thus, at most, Dr. Nogales's opinion was relevant to whether Plaintiff's diagnosed post-traumatic-stress disorder and major depression were severe impairments. But assuming that the ALJ did not consider Dr. Nogales's opinion for that purpose, the resulting error was harmless because the ALJ found that Plaintiff's post-traumatic-stress disorder and major depression were severe impairments. See AR 1321.

Accordingly, remand is not warranted on this claim of error.

## B.    Subjective-Symptom Testimony

Plaintiff contends that the ALJ erred in rejecting her testimony regarding the intensity, persistence, and limiting effects of her mental and physical impairments. See Dkt. 11 at 19-25.

### 1.    Plaintiff's Testimony

At the March 23, 2023 hearing, Plaintiff testified that she was unable to work due to having been hit by a car in October 2017. See AR 50. She fractured her face, left shoulder, wrists, and left hand. See id. As a result, she could not make a fist, experienced cramps, and suffered from "systematic reflex dystrophy syndrome." AR 50-51. She testified that her back, neck, and elbow were in constant pain. See id. As a general matter, her pain was a "seven" on a scale of 0 to 10, but on a "bad day," she claimed it was a 10. See AR 53, 58-59. She was prescribed Tramadol for her pain but reported that it was not helpful. See AR 52-53. When asked if she could tolerate the handling and fingering requirements of her previous work as a medical biller, she answered, "No." AR 60.

Additionally, Plaintiff suffered from "severe migraines" at least twice a month that lasted up to a week at a time. See AR 50-51. In order to combat the migraines, she had to stay in a dark room with "no noise." AR 51. She also

18

experienced difficulty remembering things. See id.. For example, she testified that she would put something away but, within minutes, forget where she had put it. See AR 57. Her forgetfulness frustrated her. See id.

Plaintiff testified that she lived in an apartment and handled her own finances, although she claimed that she was "not good at it." AR 53, 60. She did not leave her home unless she had a doctor's appointment or "want[ed] something from the store." AR 55. She required friends or family to drive her to appointments, but if they were unavailable, she took public transportation. See AR 54. When taking public transportation, she sometimes would get "confused" and, as a result, would miss her bus stop. Id. She did not socialize, watch television, or "surf[] the internet" because she had "lost interest in everything" and did not "feel comfortable being around people." AR 53-55. She could walk "no more than 10 to 15 minutes" and stand "about 15 minutes" before needing to rest. AR 56. She could not lift a gallon of milk or turn a door knob with her left hand but could do so with her right. See AR 57, 59-60. She could not type or use a pencil, nor could she raise her elbow. See AR 61. Nevertheless, she could cook for herself. See AR 60.

At the April 29, 2025 hearing, Plaintiff testified that, as a result of the 2017 accident, she was in daily pain that worsened with every passing day. See AR 1353. According to Plaintiff, her hand and elbow were in constant pain. See AR 1354. She described the pain as "bad," noting that it felt like it was "burning." Id. She stated that she could occasionally grip small objects with her left hand, although she often dropped them, and claimed that she could carry no more than one pound in her left arm. See AR 1354-55. She likewise claimed that her right arm was "pretty bad," stating that she could not lift "more than five or six pounds." AR 1356. She could reach for things at chest level, in front of her, or over her head. See id. The most she could do with her left arm was reach the front part of her hair. See AR 1357. She could not be on

her feet or stay in a seated position for more than five minutes, and her ability to do both had deteriorated since 2017. See id. In addition, she testified that she had nerve damage in her neck and lower back that caused her to suffer from "bad migraines." AR 1356.

Plaintiff also testified about the impacts of her mental-health impairments. See AR 1358-62. She testified that she had trouble remembering things and that she had "withdraw[n] a lot from people." AR 1358. She lived with a friend in an RV, in which she spent most days fixing "little things" and folding clothes. AR 1359-61. She sometimes left the RV to run errands but was not able to do so alone. See AR 1362. Although she played games on her phone, she abandoned them before finishing because she could not concentrate. See AR 1362-63. She did not sleep during the day and, at night, slept no more than "three to four hours." AR 1362. She took medication for her mental-health problems and experienced no side effects. See AR 1361.

### 2.    The ALJ's Decision

The ALJ rejected Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of her physical and mental impairments. See AR 1326-29. In doing so, the ALJ summarized Plaintiff's testimony, as well as the relevant medical evidence in the record. See id. The ALJ found that Plaintiff's subjective complaints were "not fully consistent with the objective medical evidence during the period at issue." AR 1326. Specifically, the ALJ noted that "the reviewing and examining opinions find [Plaintiff] to be much more capable than she claims" and that her medical records reflected that she had responded well to medications for her mental-health symptoms. See AR 1327-28. Additionally, the ALJ found that Plaintiff's ability to engage in daily activities, such as riding a bicycle and walking her dog, undercut her testimony. See AR 1326-28.

### 3.   Legal Standard

An ALJ's assessment of a claimant's allegations concerning the severity of her symptoms is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended) (citation omitted); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)), superseded on other grounds by 20 C.F.R. §§ 404.1502(a), 416.902(a).

In evaluating a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. See Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007); see also SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'" Lingenfelter, 504 F.3d at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Id. (emphasis in original) (citing Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).

If the claimant meets the first test, the ALJ may discount the claimant's subjective symptom testimony only if the ALJ makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). But the ALJ is not required to "perform a line-by-line exegesis of the claimant's testimony." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020). Rather, absent a finding or affirmative evidence of malingering, the ALJ must

provide a "clear and convincing" reason for rejecting the claimant's testimony. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citing Lingenfelter, 504 F.3d at 1036); Treichler, 775 F.3d at 1102. If the ALJ's evaluation of a plaintiff's alleged symptoms is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

    **4.    Analysis**

The ALJ offered specific, clear, and convincing reasons for rejecting Plaintiff's subjective-symptom testimony. First, the medical evidence in the record supported the ALJ's credibility finding. "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony" (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995))).

Here, the ALJ properly rejected Plaintiff's subjective-symptom testimony based on the objective medical evidence contradicting it. Plaintiff's treatment records undercut her testimony regarding her physical abilities. For example, although she testified that she could not make a fist, turn a doorknob, or grip small objects with her left hand, see AR 1354-55, she was able to generate 30 pounds of force using her left hand during a 2021 examination, see AR 789. Moreover, the examiner's finding that she had a "normal range of motion of the joints of the upper extremities," AR 790, contradicted Plaintiff's testimony that she had nearly no range of motion in her left arm, see AR 1356-57. The medical evidence likewise undermined Plaintiff's testimony that she could lift only one pound with her left arm and five pounds with her right arm, and could not use her left arm for lifting, fingering, or other manipulative tasks. See

AR 60, 1354-56. Indeed, a consultative examiner and two state-agency physicians found that she was capable of performing light work that required her to frequently push, pull, reach, handle, and finger with her left arm. See AR 82-85, 132-36, 788-92, 1878-87. The ALJ did not err in relying on the foregoing evidence to reject Plaintiff's subjective-symptom testimony concerning the effects of her physical impairments. See Carmickle, 533 F.3d at 1161-62 (finding that ALJ permissibly discounted claimant's testimony concerning the severity of his physical limitations based in part on medical opinions indicating that he retained the capacity for light work).

Plaintiff's medical records, likewise, undermined her testimony about the severity of her mental-health symptoms. Although she testified that her mental-health impairments prevented her from concentrating, caused her severe memory problems, and led to social isolation, see AR 51, 1358-62, her treatment records showed otherwise. For example, in March 2021, a consultative examiner found that Plaintiff's intellectual functioning fell "within the low average range" and that she could "understand, remember and carry out short, simplistic instructions without difficulty." AR 795-97. Similarly, two state-agency medical consultants found that she was capable of understanding and remembering simple instructions. See AR 86-89, 137-39. The state-agency medical consultants also found that Plaintiff had no social-interaction limitations. See AR 88, 138.

Moreover, the contemporaneous treatment records also contradicted Plaintiff's testimony. Although she testified at the April 2025 hearing that she continued to experience severe mental-health symptoms, see AR 1358-62, her treatment notes from January 2025 reflect that she was "stable" on her medications, which were "working fine," and that her "anxiety and mood [were] under control," AR 1670. Indeed, she reported that she had "observed improvements in attention span, mood, and anxiety, and expressed satisfaction

with the treatment plan." Id. What's more, contrary to her April 2025 hearing testimony that she lacked any social interaction, see AR 53-55, 1358, 1362, her treatment notes reflect that she was "engaged in social activities," AR 1670. Those same treatment notes state that her memory was "intact," her thought process was "[l]inear, logical and coherent," and that her cognition was "alert and oriented." Id. Given that evidence, the ALJ reasonably relied on the treatment records and medical opinions in discounting Plaintiff's testimony regarding the severity of her mental-health symptoms. See Mead v. Astrue, 330 F. App'x 646, 648 (9th Cir. 2009) ("The ALJ gave specific, clear, and convincing reasons for the credibility finding, including treatment notes indicating that Mead's depression had improved and that she was responding well to treatment.").

Second, the ALJ properly found that Plaintiff's ability to engage in daily activities contradicted her testimony concerning the symptoms of her physical and mental impairments. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). "Even if the claimant experiences some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" Smartt, 53 F.4th at 499 (citation omitted). Here, the record contains several examples of activities that were inconsistent with Plaintiff's claimed limitations. Although she testified that she could not stand or stay in a seated position for more than five minutes, medical records indicate that she rode a bicycle in October 2020. See AR 771. Standing alone, riding a bicycle on one occasion does not show that Plaintiff was capable of full-time work. It does, however, undermine Plaintiff's testimony regarding the extent of her physical limitations. Indeed, it would have required her to reach for and grip the bicycle's handlebars with

both hands, which is at odds with her testimony that she could not use her left hand to grip or even turn a doorknob, as well as her testimony that she could use her arm only to reach the front part of her hair.[7] See AR 57-60, 1357; Valentine v. Comm'r, 574 F.3d 685, 693 (9th Cir. 2009) (claimant's daily activities undermined his allegations regarding the severity of his limitations, even though they did not establish ability to return to past work). Moreover, although she testified in March 2023 that she was incapable of walking her dog, see AR 54, she affirmed in November 2024 that walking her dog was her "routine workout," AR 1665.[8]

In short, the ALJ's stated reasons for rejecting Plaintiff's subjective-symptom testimony were supported by the evidence in the record. See Carmickle, 533 F.3d at 1162 (9th Cir. 2008) (ALJ's rejection of claimant's credibility is proper provided he cites a valid reason that it is adequately supported by the record). Accordingly, remand is not warranted on this issue.

## IV.    CONCLUSION

The ALJ's denial of benefits is affirmed and this case is dismissed with prejudice.

Date: June 24, 2026

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

---

[7] Riding a bicycle was also inconsistent with Plaintiff's claims that she never left her home other than to go shopping on foot and attend medical appointments. See AR 55.

[8] As with Plaintiff's act of riding a bicycle, her "routine workout" of walking her dog contradicted her testimony that she never left her home other than to go shopping and attend medical appointments. See AR 55.